FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

2013 NOV -8 P 12: 57

CLERK US DISTRICT COURT
ALEXANDRIA. VIRGINIA

JOHN FOSTER-BEY, in his capacity as )
Trustee of and Participant under the CSR, Incorporated )
Employee Stock Ownership Plan, )
)
And )
)
CSR, INCORPORATED )
)
   Plaintiffs, )   Civil Action No. 13CV 1382
v. )      CMH / JFA
)
SHERRIE S. WAIN )
2801 Lee Highway, # 203 )
Arlington, VA 22201 )
)
And )
)
TERRENCE M. MCMANUS )
95 Osprey Circle )
Okatee, SC 29909 )
)
   Defendants. )

## COMPLAINT

COME NOW the Plaintiffs, John Foster-Bey, Trustee of and Participant under the CSR,

Incorporated Employee Stock Ownership Plan, and CSR, Incorporated, and for their Complaint

against the Defendants Sherrie S. Wain and Terrence M. McManus, state as follows:

### THE PARTIES

1.  Plaintiff John Foster-Bey is the sole Trustee of and a Participant under the CSR

Incorporated Employee Stock Ownership Plan ("CSR ESOP"), an employee stock ownership

plan governed by the Employee Retirement Income Security Act of 1974, as amended

("ERISA") (29 U.S.C. § 1001 et seq. (ERISA § 1 *et seq*.). Mr. Foster-Bey brings this action in

BEAN, KINNEY & KORMAN
LAW OFFICES
A PROFESSIONAL CORPORATION
2300 WILSON BOULEVARD, 7TH FLOOR
ARLINGTON, VIRGINIA 22201

his capacity as the fiduciary (as defined in 29 U.S.C. § 1002(21)(A)) (ERISA § 3(21)(A)) of the CSR ESOP and as a Participant (as defined in 29 U.S.C. 1002(7) (ERISA) § 3(7)) under the CSR ESOP. Plaintiff John Foster-Bey, as fiduciary of and Participant in the ESOP brings these claims under 29 U.S.C. § 1132(a)(2) and (3) (ERISA §§ 502(a)(2) and (3)).

2.      Plaintiff CSR, Incorporated ("CSR") is a District of Columbia corporation with its principal place of business located in Arlington County, Virginia. All of the outstanding stock of CSR is held by the CSR ESOP. Pursuant to Article IX of the CSR ESOP document (the "Plan Agreement"), CSR is the "Plan Sponsor" and "Plan Administrator," and is the "named fiduciary" of the CSR ESOP for the purposes of ERISA and the Internal Revenue Code, as applicable.

3.      Defendant Sherrie S. Wain ("Wain"), formerly known as Sherrie S. Aitken, is an adult individual who resides in Arlington County, Virginia. Wain was the President and Chief Executive Officer ("CEO") of CSR from January 1, 1987 to December 2, 2011, and a Director of CSR from at least 1990 to April 8, 2013. In addition, at all times relevant hereto, prior to her resignation as CEO, Defendant Wain was the "Plan Administrator" and from April 17, 2003 until December 2, 2011, was a member of the CSR Retirement Plan Committee which served as the Trustee and a fiduciary of the CSR ESOP. Wain was therefore a fiduciary of the CSR ESOP within the meaning of 29 U.S.C. § 1002(21)(A) (ERISA § 3(21)(A)). Wain held all of these positions in Arlington County, Virginia.

4.      Defendant Terrence M. McManus ("McManus") is an adult individual who currently resides in South Carolina. McManus was the Chief Financial Officer ("CFO") of CSR from October 1, 2001 to October 31, 2012, and a Director of CSR from September 30, 2000 to April 8, 2013. He was also a member of the CSR Retirement Plan Committee, which served as the Trustee and fiduciary of the CSR ESOP from April 17, 2003 until December 2, 2011.

McManus was therefore a fiduciary of the ESOP within the meaning of 29 U.S.C. § 1002(21)(A) (ERISA § 3(21)(A). McManus held all of these positions in Arlington County, Virginia.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U. S. C. § 1331 and 29 U.S.C. § 1132(e)(1) (ERISA § 502(e)(1)).  The causes of action arise under 29 U.S.C. §§ 1132(a)(2) and (3) (ERISA §§ 502(a)(2) and (3)), representing statutes of the United States providing exclusive jurisdiction to United States District Courts in cases brought  under ERISA Title I, including, but not limited to, all actions arising from breaches of fiduciary duties owed to an ESOP, its participants and beneficiaries by fiduciaries of the ESOP.

6.      This Court has supplemental jurisdiction over CSR's individual claims against the Defendants for state law causes of action arising from breaches of contract, and breaches of fiduciary duties pursuant to 28 U.S.C. § 1367.

7.      Venue lies in this Court in that the actions giving rise to this suit occurred within this District and Division, pursuant to 29 U.S.C. § 1132(e)(2) (ERISA § 502(e)(2)) as to the ERISA claims.

## UNDERLYING FACTS

### I.      CSR AND THE ADOPTION OF THE CSR ESOP

8.      CSR was originally founded in 1964.  In 1978, it was reorganized under the then new management of Jack Dickerson and Helen Dickerson, with the assistance of Defendant Wain.

9.      CSR adopted the CSR ESOP effective as of October 1, 1985 with the intention of utilizing the CSR ESOP to purchase the corporate stock held by the Dickersons.  In late 1986,

the Dickersons sold 92.3% of the outstanding common stock of CSR to the CSR ESOP, and on January 1, 1987 Defendant Wain became CEO and President of CSR.

10.     An employee stock ownership plan is a qualified, defined contribution, stock bonus (or combination stock bonus plan and money purchase pension) plan governed by ERISA that invests primarily in "qualifying employer securities," which, typically, are shares of capital stock in the employer that created the plan. *See* 29 U.S.C. §1107(d)(6) (ERISA § 407(d)(6)). The stated purpose of the CSR ESOP is described in the Plan Agreement as follows: "The Plan and its related trust are maintained for the exclusive benefit of eligible employees and their beneficiaries and are intended to invest primarily in stock of the company and meet the requirements of a qualified employee stock ownership plan under sections 401(a), 501(a), and 4975(e)(7) of the Internal Revenue Code of 1986, as amended."

11.     Beginning in the latter part of 2000, Wain and McManus developed and executed a scheme by which they, in their capacities as CEO and CFO of CSR, and as members of the CSR Board of Directors (the "Board"), would pay themselves bonuses greatly in excess of that which is reasonable for executive officers of such a business entity under the circumstances. As a result, the Plaintiffs were harmed through the wrongful diversion of funds which should have been retained as either working capital for CSR or been made available to the CSR ESOP for payments of its repurchase liability to its participants and/or beneficiaries when necessary or required.

12.     The CSR bylaws require three Directors. Nevertheless, on or about April 17, 2003, Wain and McManus, who at the time constituted two of the three required Directors of CSR, terminated Neuberger Berman as the Trustee of the CSR ESOP, formed the CSR

Retirement Plan Committee (the "Committee") to be the Trustee for the CSR ESOP, and named themselves as the sole members of the Committee.

13.     CSR reports its financial results and generally has conducted its operations with a fiscal year which coincides with the Federal Government's fiscal year, rather than with the calendar year. Specifically, CSR's fiscal years begin on October 1 of each year and end on September 30 of the next year. For clarity, the term used herein to denote a particular fiscal year is, for example, to call that fiscal year "Fiscal Year End" ("FYE") 9/30/2002.

14.     Compensation amounts reported herein are associated with the fiscal year to which they relate. Salaries are associated with the fiscal year during which they were paid. However, all bonuses (both lump-sum and executive bonuses) relate to the fiscal year preceding the fiscal year in which they were paid. The financial performance of CSR for any particular fiscal year was allegedly considered by the Defendants when determining the amount of such bonuses, which were paid after the end of each fiscal year.

## II.   THE 2000 FISCAL YEAR COMPENSATION

15.     In the latter part of 1999, Wain established base salary compensation levels for all CSR employees for the fiscal year ending on September 30, 2000 ("FYE 9/30/2000"). In so doing, she established a fiscal year annual salary for herself of $110,000.00. Additionally, McManus was hired as Vice President of Finance on March 16, 2000, with a starting annual salary of $81,016.00. During FYE 9/30/2000, McManus received total salary of $40,781.00.

16.     During the latter part of 2000, the Board authorized lump sum bonuses to certain select employees, including Wain and McManus, for FYE 9/30/2000. The lump sum bonus for Wain was $32,000.00 and for McManus it was $5,000.00.

17.     In the latter part of 2000 as well, in addition to the salary, benefits, and lump sum bonuses, the Board adopted corporate resolutions authorizing executive bonuses solely for Wain and McManus, payable in monthly installments commencing in January of the next calendar year (2001).  Wain's executive bonus for FYE 9/30/2000 was $376,000.00 and McManus' executive bonus was $94,000.00.

18.     Thus, for FYE 9/30/2000, Wain's total compensation package for salary and bonuses equaled **$518,000.00**, while McManus' total compensation for salary and bonuses totaled **$139,781.00**.  For FYE 9/30/2000, Wain and McManus authorized compensation packages for the two of them of salaries and bonuses which totaled **$657,781.00**, and Wain and McManus were paid these amounts.

## III.    THE 2001 FISCAL YEAR COMPENSATION

19.     In the latter part of 2000, the Board established base salary compensation levels for all CSR employees for the fiscal year ending on September 30, 2001 ("FYE 9/30/2001").  In so doing, they established fiscal year annual salaries for Wain of $113,000.00, and for McManus of $83,200.00.

20.     During the latter part of 2001, the Board authorized lump sum bonuses to certain select employees, including Wain and McManus, for FYE 9/30/2001.  The lump sum bonus for Wain was $34,000.00 and for McManus it was $8,500.00.

21.     In the latter part of 2001 as well, in addition to the salary, benefits, and lump sum bonuses, the Board adopted corporate resolutions authorizing executive bonuses for Wain and McManus, payable in monthly installments commencing in January of the next calendar year (2002).  Wain's executive bonus for FYE 9/30/2001 was $504,875.00 and McManus' executive bonus was $216,375.00.

22.     Thus, for FYE 9/30/2001, Wain's total compensation package for salary and bonuses equaled **$651,875.00**, while McManus' total compensation for salary and bonuses totaled **$308,075.00**.   For FYE 9/30/2001, Wain and McManus authorized compensation packages for the two of them of salaries and bonuses which totaled **$959,950.00**, and Wain and McManus were paid these amounts.

## IV.   THE 2002 FISCAL YEAR COMPENSATION

23.     In the latter part of 2001, the Board established base salary compensation levels for all CSR employees for the fiscal year ending on September 30, 2002 ("FYE 9/30/2002").   In so doing, they established fiscal year annual salaries for Wain of $113,000.00, and for McManus of $83,200.00.

24.     During the latter part of 2002, the Board, consisting of only Wain and McManus in contravention of the CSR bylaws requiring three Directors, authorized lump sum bonuses to certain select employees, including themselves, for FYE 9/30/2002.   The lump sum bonus for Wain was $37,000.00 and for McManus it was $10,500.00.

25.     In the latter part of 2002 as well, in addition to the salary, benefits, and lump sum bonuses, Wain and McManus, constituting only two of three required Directors, adopted corporate resolutions authorizing executive bonuses solely for the two of them, payable in monthly installments commencing in January of the next calendar year (2003).   Wain's executive bonus for FYE 9/30/2002 was $259,000.00 and McManus' executive bonus was $111,000.00.

26.     Thus, for FYE 9/30/2002, Wain's total compensation package for salary and bonuses equaled **$409,000.00**, while McManus' total compensation for salary and bonuses totaled **$204,700.00**.   For FYE 9/30/2002, Wain and McManus authorized compensation packages for the two of them of salaries and bonuses which totaled **$613,700.00**.  Of these

amounts, Wain was actually paid $406,000.00 and McManus was actually paid $202,700.00, totaling $608,700.00.

## V.   THE 2003 FISCAL YEAR COMPENSATION

27.    In the latter part of 2002, Wain and McManus established base salary compensation levels for all CSR employees for the fiscal year ending on September 30, 2003 ("FYE 9/30/2003").  In so doing, they established fiscal year annual salaries for Wain of $120,000.00, and for McManus of $100,000.00.

28.    During the latter part of 2003, the Board, consisting of only Wain and McManus in contravention of the CSR by-laws requiring three Directors, authorized lump sum bonuses to certain select employees, including themselves, for FYE 9/30/2003.  The lump sum bonus for Wain was $37,000.00 and for McManus it was $10,500.00.

29.    In the latter part of 2003 as well, in addition to the salary, benefits, and lump sum bonuses, Wain and McManus, constituting only two of three required Directors, adopted corporate resolutions authorizing executive bonuses solely for the two of them, payable in monthly installments commencing in January of the next calendar year (2004).  Wain's executive bonus for FYE 9/30/2003 was $264,500.00 and McManus' executive bonus was $125,000.00.

30.    Thus, for FYE 9/30/2003, Wain's total compensation package for salary and bonuses equaled **$421,500.00**, while McManus' total compensation for salary and bonuses totaled **$235,500.00**.   For FYE 9/30/2003, Wain and McManus authorized compensation packages for the two of them of salaries and bonuses which totaled **$657,000.00**, and Wain and McManus were paid these amounts.

## VI.   THE 2004 FISCAL YEAR COMPENSATION

31.    In the latter part of 2003, Wain and McManus established base salary compensation levels for all CSR employees for the fiscal year ending on September 30, 2004 ("FYE 9/30/2004"). In so doing, they established fiscal year annual salaries for Wain of $130,000.00, and for McManus of $115,000.00.

32.    During the latter part of 2004, Wain and McManus, constituting only two of three required Directors, authorized lump sum bonuses to certain select employees, including themselves, for FYE 9/30/2004. The lump sum bonus for Wain was $39,000.00 and for McManus it was $11,500.00.

33.    In the latter part of 2004 as well, in addition to the salary and benefits, and lump sum bonuses, Wain and McManus, constituting only two of three required Directors, adopted corporate resolutions authorizing executive bonuses solely for the two of them, payable in monthly installments commencing in January of the next calendar year (2005). Wain's executive bonus for FYE 9/30/2004 was $213,500.00 and McManus' executive bonus was $91,500.00.

34.    Thus, for FYE 9/30/2004, Wain's total compensation package for salary and bonuses equaled **$382,500.00**, while McManus' total compensation for salary and bonuses totaled **$218,000.00**. For FYE 9/30/2004, Wain and McManus authorized compensation packages for the two of them of salaries and bonuses which totaled **$600,500.00**, and Wain and McManus were paid these amounts.

35.    In addition to the other compensation Wain and McManus received in FYE 9/30/2004, they also caused CSR to pay them on October 23, 2003 accrued interest on the deferred payment of the earlier executive bonuses in the amounts of $26,399.04 for Wain, and $4,307.95 for McManus. The promissory notes issued to them to evidence the executive

bonuses for FYE 9/30/2000, FYE 9/30/2001 and FYE 9/30/2002 were interest bearing. Thereafter, the promissory notes issued to them for payment of the executive bonuses were non-interest bearing.

## VII.   THE 2005 FISCAL YEAR COMPENSATION

36.     In the latter part of 2004, Wain and McManus established base salary compensation levels for all CSR employees for the fiscal year ending on September 30, 2005 ("FYE 9/30/2005"). In so doing, they established fiscal year annual salaries for Wain of $136,500.00, and for McManus of $120,800.00.

37.     During the latter part of 2005, Wain and McManus, constituting only two of three required Directors, authorized lump sum bonuses to certain select employees, including themselves, for FYE 9/30/2005. The lump sum bonus for Wain was $41,000.00 and for McManus it was $12,100.00.

38.     In the latter part of 2005 as well, in addition to the salary, benefits, and lump sum bonuses, Wain and McManus, constituting only two of three required Directors, adopted corporate resolutions authorizing executive bonuses solely for the two of them, payable in monthly installments commencing in January of the next calendar year (2006). Wain's executive bonus for FYE 9/30/2005 was $222,950.00 and McManus' executive bonus was $95,550.00.

39.     Thus, for FYE 9/30/2005, Wain's total compensation package for salary and bonuses equaled **$400,450.00**, while McManus' total compensation for salary and bonuses totaled **$228,450.00**. For FYE 9/30/2005, Wain and McManus authorized compensation packages for the two of them of salaries and bonuses which totaled **$628,900.00**. Of these amounts, Wain was actually paid $393,950.00 and McManus was actually paid $227,650.00, totaling $621,600.00.

## VIII.   THE 2006 FISCAL YEAR COMPENSATION

40.     In the latter part of 2005, Wain and McManus established base salary compensation levels for all CSR employees for the fiscal year ending on September 30, 2006 ("FYE 9/30/2006").   In so doing, they established fiscal year annual salaries for Wain of $143,325.00, and for McManus of $126,840.00.

41.     During the latter part of 2006, Wain and McManus, constituting only two of three required Directors, authorized lump sum bonuses to certain select employees, including themselves, for FYE 9/30/2006.   The lump sum bonus for Wain was $43,000.00 and for McManus it was $12,700.00.

42.     In the latter part of 2006 as well, in addition to the salary, benefits, and lump sum bonuses, Wain and McManus, constituting only two of three required Directors, adopted corporate resolutions authorizing executive bonuses solely for the two of them, payable in monthly installments commencing in January of the next calendar year (2007).   Wain's executive bonus for FYE 9/30/2006 was $567,200.00 and McManus' executive bonus was $243,100.00.

43.     Thus, for FYE 9/30/2006, Wain's total compensation package for salary and bonuses equaled **$753,525.00**, while McManus' total compensation for salary and bonuses totaled **$382,640.00**.   For FYE 9/30/2006, Wain and McManus authorized compensation packages for the two of them of salaries and bonuses which totaled **$1,136,165.00**, and Wain and McManus were paid these amounts.

## IX.   THE FISCAL YEAR 2007 COMPENSATION

44.     In the latter part of 2006, Wain and McManus established base salary compensation levels for all CSR employees for the fiscal year ending on September 30, 2007

("FYE 9/30/2007"). In so doing, they established fiscal year annual salaries for Wain of $150,000.00, and for McManus of $132,000.00.

45.    During the latter part of 2007, Wain and McManus, constituting only two of three required Directors, authorized lump sum bonuses to certain select employees, including themselves, for FYE 9/30/2007. The lump sum bonus for Wain was $45,000.00 and for McManus it was $13,200.00.

46.    In the latter part of 2007 as well, in addition to the salary, benefits, and lump sum bonuses, Wain and McManus, constituting only two of three required Directors, adopted corporate resolutions authorizing executive bonuses solely for the two of them, payable in monthly installments commencing in January of the next calendar year (2008). Wain's executive bonus for FYE 9/30/2007 was $383,881.55 and McManus' executive bonus was $164,520.67.

47.    Thus, for FYE 9/30/2007, Wain's total compensation package for salary and bonuses equaled **$578,881.55**, while McManus' total compensation for salary and bonuses totaled **$309,720.67**. For FYE 9/30/2007, Wain and McManus authorized compensation packages for the two of them of salaries and bonuses which totaled **$888,602.22**, and Wain and McManus were paid these amounts.

X.    **THE FISCAL YEAR 2008 COMPENSATION**

48.    In the latter part of 2007, Wain and McManus established base salary compensation levels for all CSR employees for the fiscal year ending on September 30, 2008 ("FYE 9/30/2008"). In so doing, they established fiscal year annual salaries for Wain of $156,000.00, and for McManus of $137,300.00.

49.    During the latter part of 2008, Wain and McManus, constituting only two of three required Directors, authorized lump sum bonuses to certain select employees, including

themselves, for FYE 9/30/2008.   The lump sum bonus for Wain was $46,770.00 and for McManus it was $13,730.00.

50.     In the latter part of 2008 as well, in addition to the salary, benefits, and lump sum bonuses, Wain and McManus, constituting only two of three required Directors, adopted corporate resolutions authorizing executive bonuses solely for the two of them, payable in monthly installments commencing in January of the next calendar year (2009).   Wain's executive bonus for FYE 9/30/2008 was $233,284.26 and McManus' executive bonus was $99,978.97.

51.     Thus, for FYE 9/30/2008, Wain's total compensation package for salary and bonuses equaled **$436,054.26**, while McManus' total compensation for salary and bonuses totaled **$251,008.97**.   For FYE 9/30/2008, Wain and McManus authorized compensation packages for the two of them of salaries and bonuses which totaled **$687,063.23**, and Wain and McManus were paid these amounts.

## XI.     THE FISCAL YEAR 2009 COMPENSATION

52.     In the latter part of 2008, Wain and McManus established base salary compensation levels for all CSR employees for the fiscal year ending on September 30, 2009 ("FYE 9/30/2009").   In so doing, they established fiscal year annual salaries for Wain of $162,250.00, and for McManus of $142,800.00.

53.     During the latter part of 2009, Wain and McManus, constituting only two of three required Directors, authorized lump sum bonuses to certain select employees, including themselves, for FYE 9/30/2009.   The lump sum bonus for Wain was $50,350.00 and for McManus it was $15,950.00.   No executive bonuses were authorized for FYE 9/30/2009.

54.     Thus, for FYE 9/30/2009, Wain's total compensation package for salary and bonuses equaled **$212,600.00**, while McManus' total compensation for salary and bonuses

totaled **$158,750.00**.   For FYE 9/30/2009, Wain and McManus authorized compensation packages for the two of them of salaries and bonuses which totaled **$371,350.00**, and Wain and McManus were paid these amounts.

## XII.   THE FISCAL YEAR 2010 COMPENSATION

55.   In the latter part of 2009, Wain and McManus established base salary compensation levels for all CSR employees for the fiscal year ending on September 30, 2010 ("FYE 9/30/2010").   In so doing, they established fiscal year annual salaries for Wain of $169,600.00, and for McManus of $149,200.00.

56.   During the latter part of 2010, Wain and McManus, constituting only two of three required Directors, authorized lump sum bonuses to certain select employees, including themselves, for FYE 9/30/2010.   The lump sum bonus for Wain was $50,880.00 and for McManus it was $14,920.00.

57.   In the latter part of 2010 as well, in addition to the salary, benefits, and lump sum bonuses, Wain and McManus, constituting only two of three required Directors, adopted corporate resolutions authorizing executive bonuses solely for the two of them, payable in monthly installments commencing in January of the next calendar year (2011).   Wain's executive bonus for FYE 9/30/2010 was $238,000.00 and McManus' executive bonus was $102,000.00.

58.   Thus, for FYE 9/30/2010, Wain's total compensation package for salary and bonuses equaled **$458,480.00**, while McManus' total compensation for salary and bonuses totaled **$266,120.00**.   For FYE 9/30/2010, Wain and McManus authorized compensation packages for the two of them of salaries and bonuses which totaled **$724,600.00**, and Wain and McManus were paid these amounts.

## XIII.   THE FISCAL YEAR 2011 COMPENSATION

59.     In the latter part of 2010, Wain and McManus established base salary compensation levels for all CSR employees for the fiscal year ending on September 30, 2011 ("FYE 9/30/2011").   In so doing, they established fiscal year annual salaries for Wain of $176,400.00, and for McManus of $156,700.00.

60.     During the latter part of 2011, Wain and McManus, constituting only two of three required Directors, authorized lump sum bonuses to certain select employees, including themselves, for FYE 9/30/2011.   The lump sum bonus for Wain was $52,920.00 and for McManus it was $15,670.00.

61.     In the latter part of 2011 as well, in addition to the salary, benefits, and lump sum bonuses, Wain and McManus, constituting only two of three required Directors, adopted corporate resolutions authorizing executive bonuses solely for the two of them, payable in monthly installments commencing in January of the next calendar year (2012).   Wain's executive bonus for FYE 9/30/2011 was $375,000.00 and McManus' executive bonus was $250,000.00.

62.     Thus, for FYE 9/30/2011, Wain's total compensation package for salary and bonuses equaled **$604,320.00**, while McManus' total compensation for salary and bonuses totaled **$422,370.00**.   For FYE 9/30/2011, Wain and McManus authorized compensation packages for the two of them of salaries and bonuses which totaled **$1,026,690.00**. Wain and McManus were paid these amounts.

### RELEVANT LAW

63.     29 U.S.C. § 1132(a)(2) (ERISA § 502(a)(2)), provides, in pertinent part, that a civil action may be brought by a participant, beneficiary, or fiduciary for relief under 29 U.S.C. § 1109 (ERISA § 409) and for equitable relief.

64.     29 U.S.C. § 1109(a) (ERISA § 409(a)), "Liability for Breach of Fiduciary Duty,"

provides, in pertinent part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

65.     29 U.S.C. § 1132(a)(3) (ERISA § 502(a)(3)) authorizes individual participants,

beneficiaries and fiduciaries to seek equitable relief from fiduciaries, including, without

limitation, injunctive relief and, under applicable law, constructive trust, restitution, and other

monetary relief.

66.     29 U.S.C. §§ 1104(a)(1)(A) and (B) (ERISA §§ 404(a)(1)(A) and (B)) provide, in

pertinent part, that "a fiduciary shall discharge his duties with respect to a plan solely in the

interest of the participants and beneficiaries," ... "for the exclusive purpose of providing benefits

to participants and defraying reasonable expenses of administering the plan with the care, skill

prudence, and diligence under the circumstances then prevailing that a prudent man acting in a

like capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims."

67.     These fiduciary duties under 29 U.S.C. §§ 1104(a)(1)(A) and (B) (ERISA §§

404(a)(1)(A) and (B)) are referred to as the duties of loyalty, exclusive purpose and prudence and

are "among the highest, if not the very highest" known to the law." *Edmonds v. Hughes Aircraft

Co.*, 1998 U.S. App. LEXIS 9419 (4th Cir. 1998). They entail, among other things:

a.      The duty to conduct an independent and thorough investigation into, and

to continually monitor, the merits of all the investment alternatives of a plan;

b.      The duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor. If there are adverse consequences to plan beneficiaries resulting from a conflict of interest, a fiduciary may be liable "even though there may be no evidence of a deliberate consideration of the fiduciary's self-interest." *Id.*

c.      The duty to disclose and inform, which encompasses: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

68.     29 U.S.C. §§ 1105 (ERISA § 405) renders plan fiduciaries liable for the breaches of other plan fiduciaries under certain circumstances, such as when a fiduciary knowingly participates in or conceals the breach of another fiduciary, if the fiduciary's own breach enables the breach by the other fiduciary, or if the fiduciary is aware of the other fiduciary's breach yet makes no reasonable effort to correct the breach.

69.     29 U.S.C. §§ 1056(d)(4) (ERISA § 206(d)(4)) provides that courts may order an offset of all or part of a participant's benefits against the amount the participant is ordered or required to pay to the plan, if, among other things, the participant breached his or her ERISA fiduciary duties.

70.     29 U.S.C. § 1106(b) (ERISA § 406(b)) provides that a fiduciary may not engage in self-dealing or otherwise deal with plan assets in his own interests. Department of Labor

regulations make clear that a fiduciary may not act in a transaction in which he has an interest that could affect his best judgment as a fiduciary. *See* 29 C.F.R. § 2550.408(b)-2(e)(1).

71.      29 U.S.C. § 1132(g) (ERISA § 502(g)) provides for the award of reasonable attorney's fees and costs of action in an action under ERISA.

72.      As set forth herein, Defendants Wain and McManus breached their fiduciary duties and also failed to fulfill their duties as co-fiduciaries. Plaintiffs therefore bring this action under the authority of 29 U.S.C. § 1132 (ERISA §§ 502) for relief under 29 U.S.C. § 1109 (ERISA § 409), and other relevant sections, to recover losses sustained by the CSR ESOP arising out of the breaches of fiduciary duties by Wain and McManus; for equitable relief; and seeking an order offsetting Defendants' benefits to the extent they are otherwise unable to make good on the losses of the CSR ESOP.

### COUNT I
### Breach of Fiduciary Duty by ERISA Fiduciaries

73.      Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraphs 1-72, above, as if fully set forth herein.

74.      An ESOP fiduciary, including but not limited to the ESOP's Administrator and its Trustees, who serves as an officer or director of the sponsoring corporation, has a duty to act with caution in areas of potential conflicts of interest. 29 U.S.C. § 1104(a)(1).

75.      An ESOP fiduciary, who also serves as an officer and/or director of the sponsoring corporation, is responsible for any improper actions he took as an officer or director of the sponsoring employer. An ESOP fiduciary who fails to recognize his responsibility for any improper actions and fails to take such action as is necessary to address any wrongdoing commits a breach of the fiduciary duties he owes as an ESOP fiduciary. 29 U.S.C. § 1104(a)(1). Such an ESOP fiduciary has a duty to bring appropriate action if he is aware that the officers

and/or directors of the sponsoring corporation have breached their fiduciary duties owed to the ESOP beneficiaries, including through their own actions.

76.     Defendant Wain, as President, CEO, and Director of CSR and by virtue of being one of the two members of the CSR Retirement Plan Committee, which was itself sole trustee of the CSR ESOP, was a fiduciary under ERISA of the CSR ESOP, and owed a fiduciary duty to the CSR ESOP, and its participants and beneficiaries.

77.     Defendant McManus, as CFO and Director of CSR and by virtue of being one of the two members of the CSR Retirement Plan Committee, which was itself sole trustee of the CSR ESOP, was a fiduciary under ERISA of the CSR ESOP, and owed a fiduciary duty to the CSR ESOP, and its participants and beneficiaries.

78.     Defendants Wain and McManus breached their fiduciary duties owed to the CSR ESOP, and its participants and beneficiaries in establishing, approving and implementing executive bonuses for each of them from FYE 9/30/2000 through FYE 9/30/2011 far in excess of what was appropriate given CSR's economic performance, the Defendants' contributions and services rendered to CSR, and the market rate for the Defendants' services.

79.     Wain and McManus breached their fiduciary duties owed to the CSR ESOP, and its participants and beneficiaries by authorizing and paying themselves executive bonuses from FYE 9/30/2000 through FYE 9/30/2011, which compensation constituted improper, excessive, unreasonable compensation which should have been retained as net revenue to CSR, and thereby would have enhanced the value of the CSR ESOP investment.

80.     In FYE 9/30/2000, CSR had gross revenues of $8,844,600.00.  Its pre-tax net income would have been $540,300.00, but for Wain and McManus authorizing CSR to accrue executive bonuses for them in the amount of $470,000.00.  This reduced the pre-tax net income

of CSR for FYE 9/30/2000 to $70,300.00. The executive bonuses Wain and McManus approved for themselves constituted 87% of the available pre-tax income of CSR for FYE 9/30/2000.

81.     In FYE 9/30/2001, CSR had gross revenues of $7,735,800.00. Its pre-tax net income would have been $768,900.00, but for Wain and McManus authorizing CSR to accrue executive bonuses to them in the amount of $721,250.00. This reduced the pre-tax net income of CSR for FYE 9/30/2001 to $47,650.00. The executive bonuses Wain and McManus approved for themselves constituted 93.8% of the available pre-tax income of CSR for FYE 9/30/2001.

82.     In FYE 9/30/2002, CSR had gross revenues of $8,627,700.00. Its pre-tax net income would have been $382,900.00, but for Wain and McManus authorizing CSR to accrue executive bonuses for them in the amount of $370,000.00. This reduced the pre-tax net income of CSR for FYE 9/30/2002 to $12,900.00. The executive bonuses Wain and McManus approved for themselves constituted 96.6% of the available pre-tax income of CSR for FYE 9/30/2002.

83.     In FYE 9/30/2003, CSR had gross revenues of $10,207,200.00. Its pre-tax net income would have been $439,800.00, but for Wain and McManus authorizing CSR to accrue executive bonuses for them in the amount of $389,500.00. This reduced the pre-tax net income of CSR for FYE 9/30/2003 to $50,300.00. The executive bonuses Wain and McManus approved for themselves constituted 88.6% of the available pre-tax income of CSR for FYE 9/30/2003.

84.     In FYE 9/30/2004, CSR had gross revenues of $8,302,300.00. Its pre-tax net income would have been $357,900.00, but for Wain and McManus authorizing CSR to accrue executive bonuses for them in the amount of $305,000.00. This reduced the pre-tax net income of CSR for FYE 9/30/2004 to $52,900.00. The executive bonuses Wain and McManus approved for themselves constituted 85.2% of the available pre-tax income of CSR for FYE 9/30/2004.

85.    In FYE 9/30/2005, CSR had gross revenues of $8,334,900.00. Its pre-tax net income would have been $70,300.00, but for Wain and McManus authorizing CSR to accrue executive bonuses for them in the amount of $318,500.00. This reduced the pre-tax net income of CSR for FYE 9/30/2005 to <$248,200.00> (a loss).   The executive bonuses Wain and McManus approved for themselves constituted 453.3% of the available pre-tax income of CSR for FYE 9/30/2005.

86.    In FYE 9/30/2006, CSR had gross revenues of $9,908,900.00. Its pre-tax net income would have been $883,300.00, but for Wain and McManus authorizing CSR to accrue executive bonuses for them in the amount of $810,300.00. This reduced the pre-tax net income of CSR for FYE 9/30/2006 to $73,000.00. The executive bonuses Wain and McManus approved for themselves constituted 91.7% of the available pre-tax income of CSR for FYE 9/30/2006.

87.    In FYE 9/30/2007, CSR had gross revenues of $9,645,000.00. Its pre-tax net income would have been $599,400.00, but for Wain and McManus authorizing CSR to accrue executive bonuses for them in the amount of $542,700.00. This reduced the pre-tax net income of CSR for FYE 9/30/2007 to $56,700.00. The executive bonuses Wain and McManus approved for themselves constituted 90.5% of the available pre-tax income of CSR for FYE 9/30/2007.

88.    In FYE 9/30/2008, CSR had gross revenues of $7,578,100.00. Its pre-tax net income would have been $351,900.00, but for Wain and McManus authorizing CSR to accrue executive bonuses for them in the amount of $333,300.00. This reduced the pre-tax net income of CSR for FYE 9/30/2008 to $18,600.00. The executive bonuses Wain and McManus approved for themselves constituted 94.7% of the available pre-tax income of CSR for FYE 9/30/2008.

89.    In FYE 9/30/2009, CSR had gross revenues of $6,510,300.00. Its pre-tax net income was <$129,500.00> (a loss). Nonetheless, Wain and McManus authorized a lump sum

bonus to Wain of $50,350.00 and a lump sum bonus to McManus of $15,950.00. No executive bonuses were authorized for FYE 9/30/2009.

90.     In FYE 9/30/2010, CSR had gross revenues of $7,780,800.00. Its pre-tax net income would have been $363,200.00, but for Wain and McManus authorizing CSR to accrue executive bonuses for them in the amount of $340,000.00. This reduced the pre-tax net income of CSR for FYE 9/30/2010 to $23,200.00. The executive bonuses Wain and McManus approved for themselves constituted 93.6% of the available pre-tax income of CSR for FYE 9/30/2010.

91.     In FYE 9/30/2011, CSR had gross revenues of $9,982,000.00. Its pre-tax net income would have been $675,100.00, but for Wain and McManus authorizing CSR to accrue executive bonuses for them in the amount of $625,000.00. This reduced the pre-tax net income of CSR for FYE 9/30/2011 to $50,100.00. The executive bonuses Wain and McManus approved for themselves constituted 92.6% of the available pre-tax income of CSR for FYE 9/30/2011.

92.     For FYE 9/30/2000 through FYE 9/30/2011, CSR's pre-tax net income would have totaled $5,303,500.00, but for Wain and McManus authorizing and paying themselves executive bonuses during this time period of $5,225,600.00. In all, the Defendants authorized executive bonuses for themselves which amounted to 98.5% of all of the available pre-tax net income of CSR during this twelve year period.

93.     Wain and McManus breached their fiduciary duties as fiduciaries to the CSR ESOP by paying themselves excessive compensation that was unreasonable under the circumstances, and inconsistent with their fiduciary duties to the CSR ESOP and its participants and beneficiaries, including but not limited to, the duty to discharge their duties with respect to the CSR ESOP with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in

00387936-2                          22

the conduct of an enterprise with similar character and aims in violation of 29 U.S.C. § 1104(a)(1)(B) (ERISA § 404(a)(1)(B)).

94.     Wain and McManus further breached their fiduciary duties to the CSR ESOP by voting the shares of CSR held by the CSR ESOP in favor of their retention as members of the CSR Board, by failing to take action as trustees of the CSR ESOP to remove themselves from the Board of CSR or otherwise prevent the payment of excessive benefits and unreasonable compensation to themselves, and by failing to protect the assets of the CSR ESOP from loss or dissipation as a result of their improper actions.

95.     By their conduct described above, Defendants Wain and McManus:

    a.  failed to act solely in the interest of the participants and beneficiaries of the CSR ESOP for the exclusive purpose of providing them benefits, in violation of 29 U.S. C. § 1104(a)(1)(A) (ERISA § 404(a)(1)(A));

    b.  Failed to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise with similar character and aims in violation of 29 U.S.C. § 1104(a)(1)(B) (ERISA § 404(a)(1)(B); and

    c.  As a result of their conduct described above, Defendants Wain and McManus caused the CSR ESOP to suffer financial losses for which Wain and McManus are jointly and severally liable, and received unjust profits which they must disgorge, pursuant to 29 U.S.C. § 1109(a) (ERISA § 409(a)).

Wherefore, Plaintiff John Foster-Bey, in his representative capacity as Trustee of the CSR ESOP and an ESOP participant, respectfully requests this Court to enter judgment on their

behalf and against the Defendants Wain and McManus, jointly and severally, in the amount of the Defendants' executive bonuses for FYE 9/30/2000 through FYE 9/30/2011, the interest paid to Defendants thereon, pre and post judgment interest, and Plaintiffs' reasonable attorneys' fees and costs incurred herein, as authorized by 29 U.S.C. § 1132(g) (ERISA § 502(g)), that this Court declare that all such funds of the Defendants are held in constructive trust for the benefit of the Plaintiffs, as authorized by 29 U.S.C. § 1109 (ERISA § 409), order that Defendants' benefit payments under the CSR ESOP be used to offset Defendants' liability, as authorized by 29 U.S.C. §§ 1056(d)(4) (ERISA § 206(d)(4)), and grant such other relief as this Court deems just and proper.

## COUNT II
### Self-Dealing - ERISA

96.    Plaintiffs repeat, reallege and incorporate by reference the allegations contained in paragraphs 1-95, above, as if fully set forth herein.

97.    The provisions of ERISA provide that a fiduciary with respect to an ERISA plan shall not deal with the assets of the plan in his own interest or for his own account and shall not in his individual or in any other capacity act in any transaction involving the plan on behalf of a party whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries. 29 U.S.C. § 1106(b) (ERISA § 406(b)).

98.    A fiduciary of an ESOP who also serves as an officer and/or director of the sponsoring employer must act in his capacities as an officer and director with the utmost good faith, including taking care that he does not place himself in a position where his individual interest clashes with his duty of loyalty to his trust. An ESOP fiduciary has a duty to avoid placing himself in a position where his actions as the officer or director of a sponsoring corporation will prevent him from being able to function with the complete loyalty to which the

ESOP participants are entitled.    An ESOP fiduciary who deals with plan assets for his own benefit, or on his own account, thereby engages in self-dealing.

99.    Wain and McManus engaged in self-dealing in violation of 29 USC § 1106(b) (ERISA § 406(b)), when they voted the CSR ESOP stock to perpetuate their election as directors of CSR, approved and authorized payments of salaries, lump sum bonuses and executive bonuses to themselves which were greatly in excess of that which were reasonable under the circumstances then existing and without review by an independent director.

100.    Wain and McManus had a duty to ensure that their actions as officers and directors of CSR would not conflict with their obligations as fiduciaries of the CSR ESOP.  In setting compensation levels for themselves, without recusal or reliance upon independent third-party expert analysis as to levels of reasonable compensation and, in light of the CSR ESOP's repurchase liability and substantial illiquidity, the total compensation awarded to each of the Defendants is voidable and equity demands those funds be restored to CSR or otherwise made available to the CSR ESOP.

101.    As a direct and proximate result of Wain and McManus' self-dealing through voting control of the stock of CSR owned by the CSR ESOP, evidenced by Defendants authorizing and paying themselves excessive and unreasonable executive bonuses as compensation, authorizing and paying salaries and lump sum bonuses to themselves without review by an independent director, and not directing sufficient amounts to be contributed to the CSR ESOP to fund its repurchase liabilities, the CSR ESOP suffered damages through the loss of funds available to fund the CSR ESOP, the diminution in value of CSR stock and the loss of working capital for CSR, which is the sole asset of the CSR ESOP.

102.    Wain and McManus further breached their fiduciary duties to the CSR ESOP by voting the shares of CSR stock held by the CSR ESOP in favor of their retention as members of the CSR Board, by failing to take action as trustees of the CSR ESOP to remove themselves from the Board of CSR or otherwise prevent the payment of excessive benefits and unreasonable compensation to themselves, and by failing to protect the assets of the CSR ESOP from loss or dissipation as a result of their improper actions.

103.    By improperly controlling the CSR Board (through voting of the CSR stock held by the CSR ESOP) and setting their own compensation as described above, Defendants Wain and McManus engaged in self-dealing actions as ESOP trustees by dealing with the assets of the CSR ESOP in their own interest as opposed to the interest of the CSR ESOP participants and beneficiaries and failed to act solely in the interest of the participants and beneficiaries of the CSR ESOP for the exclusive purpose of providing them benefits in violation of 29 U.S.C. §§ 1104(a)(1)(A) and 1106(b) (ERISA §§ 404(a)(1)(A) and 406(b)).

Wherefore, Plaintiffs CSR, and John Foster-Bey, in his capacity as Trustee of and participant in the CSR ESOP, respectfully request this Court to enter judgment on their behalf and against the Defendants Wain and McManus, jointly and severally, in the amount of the Defendants' salaries and bonuses for Fiscal Years 2000 through 2011, as well as the amount to be shown to represent the diminution in value of the CSR stock and the CSR ESOP as a result of the diversion of those funds from CSR, and such amount necessary to repay the participants and beneficiaries of the CSR ESOP damages that may have been incurred by such participants, beneficiaries and retirees due to the diminution of the value of their interests in the CSR ESOP as a result of Defendants' wrongdoing, plus pre and post judgment interest.  Plaintiff John Foster-Bey, in his capacity as Trustee and participant of the CSR ESOP, further requests that this Court

declare that all such funds of the Defendants are held in constructive trust for the benefit of the Plaintiffs, as authorized by 29 U.S.C. § 1109 (ERISA § 409), and order that Defendants' benefit payments under the CSR ESOP be used to offset Defendants' liability, as authorized by 29 U.S.C. §§ 1056(d)(4) (ERISA § 206(d)(4)). In addition John Foster-Bey, in his capacity as Trustee of the CSR ESOP, respectfully requests that he be awarded his reasonable attorneys' fees and costs incurred herein, as authorized by 29 U.S.C. § 1132(g) (ERISA § 502(g)), and such other relief this Court deems just and proper.

**COUNT III**
**Liability for Breach of a Co-Fiduciary ERISA**

104.     Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraph 1 – 103 as if those paragraphs were set forth herein.

105.     29 U.S.C. § 1105 (ERISA § 405) provides, in relevant part, that "[i]n addition to any liability which he may have under any other provision of [ERISA §§ 401-414] a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan" in certain circumstances. Defendants Wain and McManus are each liable for the breaches of the other under this section.

106.     Defendant Wain participated knowingly in Defendant McManus' breaches of fiduciary duty when she voted in favor of the resolutions authorizing their excessive executive bonuses and authorizing their salaries and lump sum bonuses without review by an independent director, and Defendant McManus participated knowingly in Defendant Wain's breaches of fiduciary duty when he voted in favor of the resolutions authorizing their excessive executive bonuses and authorizing their salaries and lump sum bonuses without review by an independent director. Therefore, each is liable for the breaches of the other fiduciary, pursuant to 29 U.S.C. § 1105(a)(1) (ERISA § 405(a)(1)).

00387936-2                                          27

107. Defendant Wain enabled Defendant McManus to breach his fiduciary duties by failing to comply with 29 U.S.C. §§ 1104(a)(1) (ERISA §§ 404(a)(1)), and Defendant McManus enabled Defendant Wain to breach her fiduciary duties by failing to comply with ERISA § 404(a)(1). Therefore, each is liable for the breaches of the other fiduciary, pursuant to 29 U.S.C. § 1105(a)(2) (ERISA § 405(a)(2)).

108. Defendant Wain had knowledge of Defendant McManus' breaches of fiduciary duty and failed to take reasonable efforts under the circumstances to remedy those breaches, and Defendant McManus had knowledge of Defendant Wain's breaches of fiduciary duty and failed to take reasonable efforts under the circumstances to remedy those breaches. Therefore, each is liable for the breaches of the other fiduciary, pursuant to 29 U.S.C. § 1105(a)(3) (ERISA § 405(a)(3)).

Wherefore, Plaintiff John Foster-Bey, in his capacity as Trustee and participant of the CSR ESOP, respectfully requests this Court enter judgment on their behalf against the Defendants Wain and McManus, jointly and severally, in the amount of their salaries and bonuses for the FYE 9/30/2000 through FYE 9/30/2011, the interest paid to Defendants thereon, pre and post judgment interest, as well as Plaintiffs' reasonable attorney's fees and costs, as authorized by 29 U.S.C. § 1132(g) (ERISA § 502(g)), that this Court declare that all such funds of the Defendants are held in constructive trust for the benefit of the Plaintiffs, as authorized by 29 U.S.C. § 1109 (ERISA § 409), and order that Defendants' benefit payments under the CSR ESOP be used to offset their liability, and grant such other relief this Court deems just and proper.

## COUNT IV
### Offset of Benefits – ERISA

109.    Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraph 1 – 108 as if those paragraphs were set forth herein.

110.    29 U.S.C. § 1056(d)(4) (ERISA § 206(d)(4)) provides the courts may order an offset of all or part of a participant's benefits against the amount the participant is ordered or required to pay to the plan if, among other things, the participant breached his or her ERISA fiduciary duties.

WHEREFORE Plaintiff John Foster-Bey, as fiduciary of and participant in the CSR ESOP therefore brings this action under the authority of 29 U.S.C. § 1132(a)(2) (ERISA § 502(a)(2)) for relief under 29 U.S.C. 1109(a) (ERISA § 409(a)) to recover losses sustained by the CSR ESOP arising out of the breaches of fiduciary duties by Wain and McManus, under the authority of 29 U.S.C. 1132(a)(3) (ERISA § 502(a)(3)) seeking equitable relief and, under 29 U.S.C. § 1056(d)(4) (ERISA § 206(d)(4)), seeking an order offsetting Defendants' benefits from the CSR ESOP to the extent the Defendants are otherwise unable to make good the CSR ESOP's losses and damages.

## COUNT V
### Breach of Fiduciary Duty-Common Law

111.    Plaintiffs repeat, reallege and incorporate by reference the allegations contained in paragraphs 1-110 as if fully set forth herein.

112.    As CSR officers and members of the CSR Board, Defendants owed fiduciary obligations to CSR and its shareholder, the CSR ESOP, including a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them and, having become so informed, acting with requisite care in the discharge of their duties.

113.   Directors have a duty to place the best interest of the corporation and its shareholders over any interest possessed by a director and not shared with the shareholders generally.   Directors possess a duty not to use their position of trust and confidence, that they hold with the corporation they serve, to further their private interests.

114.   Wain and McManus breached their fiduciary duties to CSR by paying themselves excessive compensation that was unreasonable under the circumstances, and inconsistent with their fiduciary duties to CSR.   These duties include, but are not limited to, the duty to discharge their duties with respect to CSR with the care, skill, prudence, and diligence under the circumstances then prevailing which a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise with similar character and aims, including recusing themselves where appropriate and/or engaging the services of a disinterested and independent expert to advise them as to levels of reasonable compensation.

115.   A director owes the duty of undivided and unselfish loyalty to the corporation he serves and its shareholders.   A director who receives a substantial personal benefit from a transaction in which he participates breaches his duty of being disinterested or independent without guidance from an independent judgment.

116.   As a direct and proximate result of the breach of that duty, Wain and McManus, by paying themselves excessive and unreasonable compensation, caused CSR to incur damage by the loss of funds that should have been available to CSR.

Wherefore, Plaintiff CSR respectfully requests this Court enter judgment on its behalf and against the Defendants Wain and McManus, jointly and severally, in the amount of their executive bonuses for FYE 9/30/2000 through FYE 9/30/2011, the interest paid to Defendants thereon, plus pre and post judgment interest, and respectfully requests that it be awarded its

reasonable attorneys' fees and costs incurred herein, and such other relief this Court deems just and proper.

**COUNT VI**
**Self-Dealing Common-Law**

117.    Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraph 1 – 116 as if those paragraphs were set forth herein.

118.    An officer and/or director of a corporation has a duty of loyalty to that corporation and, accordingly,  must act in his capacities as an officer and director with the utmost good faith, including taking care that he does not place himself in a position where his individual interest clashes with his duty of loyalty to the corporation

119.    A fiduciary who deals with corporate assets for his own benefit or on his own account breaches his fiduciary duty as a result of his self-dealing.

120.    Wain and McManus violated their duty of loyalty to CSR when, acting as the sole directors of CSR, they approved and authorized payments of executive bonuses to themselves as officers of CSR which were greatly in excess of that which were reasonable under the circumstances then existing.

121.    Wain and McManus also violated their duty of loyalty to CSR when, acting as the sole directors of CSR, they approved and authorized payments of salaries and lump sum bonuses to themselves without review by an independent director.

122.    As a direct and proximate result of Wain and McManus' self-dealing with the assets of CSR, by paying themselves excessive and unreasonable compensation, CSR incurred damage by the loss of those funds.

Wherefore, Plaintiff CSR respectfully requests this Court enter judgment on its behalf and against the Defendants Wain and McManus, jointly and severally, in the amount of their

salaries and bonuses for the FYE 9/30/2000 through FYE 9/30/2011, the interest paid to Defendants thereon, plus pre and post judgment interest, and respectfully requests that it be awarded its reasonable attorneys' fees and costs incurred herein, and such other relief this Court deems just and proper.

**COUNT VII**
**Ultra Vires Acts**

123.    Plaintiffs repeat, reallege, and incorporate by reference the allegations contained in paragraph 1 – 122 as if those paragraphs were set forth herein.

124.    The Bylaws of CSR require that CSR's Board have three (3) directors.

125.    Beginning on or about 2003, Defendants Wain and McManus acted as the sole Directors on the Board, and remained the only Directors on the Board until on or about 2011.

126.    Accordingly, all resolutions approved by Wain and McManus as the sole directors on the Board during that time period are ultra vires and invalid.

127.    D.C. Code § 29-303.04 specifically provides that a corporation may challenge such acts by a former director or officer directly.

128.    By operating as an improper Board of two for at least 9 years, Defendants perpetuated themselves as ESOP trustees, thereby controlling the shareholder vote, the election of Directors, and CSR while they unjustly enriched themselves by authorizing their own unreasonable executive bonuses without any third director to oversee them.

129.    Defendants' salaries and lump sum bonuses were also approved ultra vires.

130.    Plaintiffs challenge the above-described resolutions of Defendants Wain and McManus that established their salaries, lump sum bonuses and executive bonuses.

Wherefore, Plaintiff CSR respectfully requests this Court find that the resolutions passed by Wain and McManus are void, and, in accordance with that finding, enter judgment on its

behalf against Defendants Wain and McManus, jointly and severally, in the amount of their salaries and bonuses for the FYE 9/30/2003 through FYE 9/30/2011, the interest paid to Defendants thereon, plus pre and post judgment interest, and respectfully requests that it be awarded its reasonable attorneys' fees and costs incurred herein, and such other relief this Court deems just and proper.

JOHN FOSTER-BEY, AS TRUSTEE OF AND PARTICIPANT
IN THE CSR INCORPORATED EMPLOYEE STOCK
OWNERSHIP PLAN, and
CSR, INCORPORATED

Respectfully submitted,

Jennifer A. Brust, Esq. (VSB No.: 29707)
William F. Krebs, Esq. (VSB No.: 17347)
BEAN, KINNEY & KORMAN, P.C.
2300 Wilson Blvd., 7th Floor
Arlington, Virginia 22201
(703) 525-4000
(703) 525-2207 (Fax)
jbrust@beankinney.com
wkrebs@beankinney.com
*Attorneys for John Foster-Bey, as fiduciary and participant
under the CSR Incorporated Employee Stock Ownership
Plan, and
CSR, Incorporated*

00387936-2                                          33