UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOHN FOSTER-BEY, in his capacity <br> As Trustee of and Participant under the CSR, <br> Incorporated Employee Stock Ownership Plan, <br> And <br> CSR, INCORPORATED <br>      Plaintiffs, <br> <br> v. <br> <br> SHERRIE S. WAIN <br> And <br> TERRENCE M. MCMANUS <br>      Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )      Civil Action No.: 1:13-cv-1382 <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION *IN LIMINE* TO EXCLUDE THE TESTIMONY
OF PLAINTIFFS' EXPERT PAUL HORN**

## I.    INTRODUCTION

This Court should exclude the testimony of Plaintiffs'[1] legal expert, Paul Horn, because

he is of no assistance to the finder of fact in this case.  Rather than offer opinions as to disputed

issues of fact, Mr. Horn offers opinions on the legal standard to apply in judging Defendants'

conduct and then draws legal conclusions by applying the law to the facts.  Mr. Horn's testimony

will offer the finder of fact with no information other than his view of how the verdict should

read.   Accordingly, his testimony should be excluded.

## II.    BACKGROUND

Pursuant to the Order Amending Rule 16(B) Scheduling Order (D.N. 42), Plaintiffs

identified Paul Horn as their expert in ERISA and corporate fiduciary duties.  Mr. Horn's

---

[1] Plaintiffs are John Foster-Bey, in his capacity as Trustee and Participant under the CSR, Incorporated Employee Stock Ownership Plan, and CSR, Incorporated ("CSR").

curriculum vita indicates that he is a lawyer admitted to the Massachusetts and California Bars.
Exhibit 1 (Horn Expert Report) at p.5.

Mr. Horn's expert report is replete with statements of the law purportedly governing
Defendants' actions and legal conclusions. With respect to his statements on the law, the
following are just a few examples of the many statements of the law set forth in Mr. Horn's
report without citation to any authority:

1) Under ERISA, an "ESOP fiduciary must act (1) free from any conflict of interest, (2)
with undivided loyalty to ESOP participants, and (3) as a prudent expert when considering and
taking ESOP-related actions" (Exh.1, p. 6);

2) "The ESOP trustee is a fiduciary and in its role as a company shareholder must
perform certain ongoing actions in conformance with these fiduciary duties to protect the
ESOP's investment as a company shareholder and the interests of ESOP participants. These
ongoing actions include (1) the election of the members of the company's board of directors, and
(2) the oversight of the board's actions" (*Id.*);

3) "These fiduciary duties assume even greater importance when the ESOP trustee is the
principal company shareholder and controls the composition of the board" (*Id.*);

4) "A company's board of directors also is an ERISA fiduciary with respect to its
selection and appointment of the ESOP trustee" (*Id.*);

5) "When making decisions as an ERISA fiduciary, the ESOP trustee has a duty to act as
a prudent expert. If the fiduciary is not an expert in a particular area, the fiduciary must seek the
advice of individuals who can supply such expertise" (*Id.*, p. 9);

6) "The standard of care that an ERISA fiduciary owes to plan participants is a higher
standard than the care owed to shareholders by board members and company officers when
making business decisions" (*Id.* p.10);

7) "Prudent fiduciary conduct means the fiduciary must engage in a prudent 'process'
when making decisions" (*Id.*);

8) The failure of a an ESOP trustee "to take any corrective action is a breach of the
trustee's fiduciary duty" (*Id.*, p. 12);

9) "A prudent ESOP trustee must act as an expert and, therefore would require evidence
that the total compensation paid to officers was in line with industry standards as supported by a
compensation consultant or a recent compensation survey" (*Id.*, p. 18); and

2

10)  "A board member's fiduciary duty under state law can be stated simply as a legal duty to act towards the corporation with (1) care, and (2) undivided loyalty" (*Id.* p. 25).

Applying the above stated legal principles, Mr. Horn's report sets forth his opinions "as to why the defendants, Sherrie Wain and Ter[r]ence McManus, in their capacity as trustees of the CSR, Incorporated Employee Stock Ownership Plan ("ESOP") and as members of the CSR, Incorporated board of directors failed to act as prudent fiduciaries by engaging in self-dealing to the detriment of ESOP participants." *Id.* at p.3.  Mr. Horn "concludes that the defendants in their fiduciary roles as ESOP trustee and as board members failed to perform prudent oversight of the board and Company officers and this breach of their fiduciary duties allowed the defendants to engage in self-dealing in the form of unreasonable executive bonuses paid to the themselves to the detriment of ESOP participants." *Id.* at p.4.

Additionally, in section III of his report, entitled "Summary of Opinions Rendered", Mr. Horn summarizes the law governing ESOP fiduciaries and ultimately opines that "the actions of the defendants were a breach of their fiduciary duties." *Id.* at pp. 6-8 (e.g. p.6: "The ESOP trustee has a fiduciary duty under [ERISA] to act <u>solely</u> in the interests of the ESOP participants and to act <u>prudently</u> when undertaking any action that affects their interests.").  In other words, Mr. Horn draws various legal conclusions that are at issue in this case, such as:

> "The defendants as the ESOP trustee did <u>not</u> act as prudent ERISA fiduciaries in (1) selecting themselves as the sole board members of CSR, and (2) then not monitoring their actions as board members regarding the payment of excessive executive bonuses to themselves as officers of CSR." *Id.* at 6.

> "The defendants as CSR board members did not act as prudent ERISA fiduciaries in appointing only themselves as the ESOP trustee and then failing to monitor their subsequent performance as trustee. The board of directors also failed to satisfy their fiduciary duties to the ESOP and its participants under state corporate law by making excessive bonus payments to themselves as officers of the Company." *Id.* at 6-7.

"[T]he actions of the defendants were a breach of their fiduciary duties because they (1) purposefully created this overlapping, conflicted arrangement between the trustee and the board, (2) used this arrangement to engage in self-dealing contrary to their duty of loyalty to ESOP participants, and (3) failed to act as prudent experts in exercising their fiduciary duties (a) under ERISA as the ESOP trustee in its oversight of the board, and (b) as board members (i) under ERISA in appointing the ESOP trustee, and (ii) under state law in failing to represent the interests of the ESOP and its participants. These purposeful failures allowed the defendants to make ongoing payments of unreasonable and excessive compensation to themselves as officers of the Company to the detriment of ESOP participants." *Id.* at 7.[2]

## III.   ARGUMENT

### A.   Paul Horn's Proposed Expert Testimony and Report Consist Solely of Legal Conclusions and Must Be Excluded.

Mr. Horn's report reads like an *amicus* brief for Plaintiffs. In effect, Plaintiffs seek to have another attorney—Mr. Horn—advocate for them at trial under the guise of permissible expert testimony. Mr. Horn's expert report and proposed testimony address the legal issues in

---

[2] Mr. Horn summarizes his opinions as follows:

- "OPINION 1: The defendants failed to act as prudent fiduciaries by purposefully creating an inherent conflict of interest that lacked any oversight and permitted self-dealing through the payment of excessive bonuses to themselves as Company officers." *Id.*
- "OPINION 2: A prudent ESOP company board member would have prevented this self-dealing arrangement by either (1) not having an identify of interest between the ESOP trustee and the board, or retaining an external independent ESOP trustee." *Id.*
- "OPINION 3: A prudent ESOP trustee would have prevented this self-dealing arrangement by requiring that one or more disinterested individuals serve on the Company's board of directors." *Id.*
- "OPINION 4: A prudent ESOP trustee would have required evidence that the executive bonus payments authorized by the board were reasonable via documentation from either (1) a compensation expert, or (2) a recent market compensation survey." *Id.*
- "OPINION 5: A prudent ESOP trustee would have made further inquiry and taken remedial action in response to the repeated statements in CSR's ESOP valuation reports that the executive bonuses paid to the Company's officers were excessive." *Id.* at 8.
- "OPINION 6: A prudent ESOP trustee would have made further inquiry and taken remedial action in response to repeated Company financial statements showing that executive bonuses paid to officers were treated as "non-allowable" expenses." *Id.*
- "OPINION 7: A prudent ESOP trustee would have monitored the actions of a co-trustee and taken remedial action vis-à-vis the co-trustee if the co-trustee's actions constituted a breach of fiduciary duties." *Id.*
- "OPINION 8: A prudent board of directors would not have authorized excessive bonus payments to themselves as the Company officers because such self-dealing constituted an impermissible personal benefit to the detriment of the Company which violated their state corporate law fiduciary duties to the ESOP as the Company shareholder." *Id.*

4

this case; namely, whether Dr. Wain and Mr. McManus breached fiduciary duties owed to CSR or the CSR ESOP by authorizing and paying themselves excessive compensation, "by voting the shares of CSR held by the CSR ESOP in favor of their retention as members of the CSR Board, by failing to take action as trustees of the CSR ESOP to remove themselves from the Board of CSR or otherwise prevent the payment of excessive benefits and unreasonable compensation to themselves, and by failing to protect the assets of the CSR ESOP from loss or dissipation as a result of their improper actions." *See* Compl. ¶¶ 78-79, 93-94. Mr. Horn's report sets for the legal standard he believes should be applied to Defendants' conduct, and then offers opinions on the verdict that should be reached. *See* Exh. 1, at 6 ("The defendants as the ESOP trustee did <u>not</u> act as prudent ERISA fiduciaries in (1) selecting themselves as the sole board members of CSR, and (2) then not monitoring their actions as board members regarding the payment of excessive executive bonuses to themselves as officers of CSR."); *id.* at 6-7 ("The defendants … did not act as prudent ERISA fiduciaries in appointing only themselves as the ESOP trustee and then failing to monitor their subsequent performance as trustee. The board of directors also failed to satisfy their fiduciary duties to the ESOP and its participants under state corporate law by making excessive bonus payments to themselves as officers of the Company.").

The law is clear, however, that the expert on the law at trial is the judge – not lawyers hired by the parties and thus, such testimony is inadmissible.

**B.      Experts May Not Testify To Legal Conclusions.**

The introduction of expert opinion testimony is governed by Federal Rule of Evidence 702.[3]  Under Rule 702, an expert may only provide testimony that "will help the trier of fact to

_____

[3] Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill,

5

understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  The Fourth Circuit

has held that "it does not help the jury for an expert to give testimony that 'states a legal standard

or draws a legal conclusion by applying the law to the facts,' because it 'supplies the jury with

no information other than the witness's view of how the verdict should be read.'" *United States*

*v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011), *cert. denied*, 132 S.Ct. 1936 (2012)(quoting *United*

*States v.* McIver, 470 F.3d 550, 561 (4th Cir. 2006)*, cert. denied,* 550 U.S. 936 (2011) and

*Weinstein's Federal* Evidence, § 704.04[2][a]).  "Each courtroom comes equipped with a 'legal

expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal

standards. *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C.Cir. 1997);

*See Marx & Co. v. Diners' Club, Inc.,* 550 F.2d 505, 509–10 (2nd Cir.), *cert. denied,* 434 U.S.

861 (1977).

     For this reason, courts consistently reject the testimony of experts who offer legal

conclusions.  *See Forrest Creek Assoc., Ltd. v. McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1242

(4th Cir. 1987) (affirming Judge Hilton's exclusion of an expert who would have testified to a

conclusion of law); *see also Specht v. Jensen*, 853 F.2d 805, 807-10 (10th Cir. 1988)*, cert.*

*denied*, 488 U.S. 1008 (1989) (finding trial court erred in allowing an attorney, called as an

expert witness, to state his views on the law and to opine on whether defendants' conduct

---

     experience, training, or education may testify in the form of an
opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized
     knowledge will help the trier of fact to understand the evidence
     or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods;
     and
(d) the expert has reliably applied the principles and methods to
     the facts of the case.

violated the law, as such testimony interfered with role of judge as sole arbiter of law); *Richmond Med. Ctr. for Women v. Hicks,* 301 F. Supp. 2d 499, 512 (E.D. Va. 2004), vacated on other grounds by 550 U.S. 901 (2007) (finding inadmissible a statement from a law professor because, in part, it "impermissibly asserts legal conclusions").

Although Federal Rule of Evidence 704 abolished the *per se* rule against testimony regarding ultimate issues of fact, it "does not open the door to all opinions.  The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted.  Nor is the rule intended to allow a witness to give *legal* conclusions." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (emphasis in original) ("allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant"); *see also Buckman v. Bombardier Corp.*, 893 F. Supp. 547, 562 (E.D.N.C. 1995) (same); *Hermitage Indus. v. Schwerman Trucking Co.*, 814 F. Supp. 484, 486 (D. S.C. 1993) (concluding that "testimony by a witness in the form of a legal conclusion is clearly inadmissible"); *Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991) (Rule "704(a) allows an expert witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact.  However, an expert may not state legal conclusions drawn by applying the law to the facts.") (citations omitted); *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Plan and Trust Agreement*, 812 F. Supp. 1376, 1378 (E.D. Pa. 1992) ("While the Federal Rules of Evidence permit helpful expert opinion that embraces an ultimate factual issue to be decided, they do not permit opinion on a question of law. . . . An expert may not opine legal conclusions drawn by applying the law to the facts.").

In short, legal conclusions do not serve to assist the trier of fact and, therefore, are

inadmissible under the Federal Rules of Evidence.

**C.     Testimony That Defendants Breached Their Fiduciary Duties Is A Legal, Not Factual, Conclusion.**

Expert testimony is admissible in certain limited circumstances in ERISA cases.  *See, e.g.*, *Musto v. Am. Gen. Corp.*, 861 F.2d 897, 911 n.9 (6th Cir. 1988)*, cert. denied*, 490 U.S. 1020 (1989) (consulting actuary and attorney testified that Congress did not "attempt to preclude the right of employers to reduce benefits" under welfare plans); *McLaughlin v. Rowley*, 698 F. Supp. 1333, 1337 (N.D. Tex. 1988) (expert testified on "the prevailing standards and practices applied by competent lenders in making, pricing, and managing comparable loans").  Significantly, however, experts are not permitted to testify to legal conclusions in ERISA cases.  *See, e.g., Lynch v. J.P. Stevens & Co.*, 758 F. Supp. 976, 1014 (D.N.J. 1991) (rejecting for consideration an expert's testimony that the employer "violated the exclusive benefit rule"); *see also Jones v. O'Higgins*, 1989 WL 103035, *7-8, 11 Emp. Benefits Cas. (BNA) 1660, No. 87-CV-1002 (N.D.N.Y. Sept. 5, 1989) (finding that plaintiff's expert—an attorney and former employee of the Department of Labor who testified that an investment strategy did not "comport with fiduciary standards"—"did not make any significant impact on the court", noting that plaintiff's expert "really testified to a legal opinion").

In ERISA and breach of fiduciary duty cases, however, courts routinely exclude expert testimony that a party has breached its fiduciary duty, because such testimony is an inadmissible legal conclusion.  *See, e.g., United States v. Chapman*, 209 Fed. Appx. 253, 268-70 (4th Cir. 2006), *cert. denied*, 550 U.S. 949 (2007) (affirming trial court's decision to preclude expert testimony "about whether a fiduciary duty existed" and expert testimony that "would amount to an expert opinion that [defendant] did not violate the law"); *Alco Indus., Inc. v. Wachovia Corp.*, 527 F. Supp. 2d 399, 409 (E.D. Penn. 2007) (excluding expert who opined that the defendant

8

violated its duty of prudent investment under ERISA); *see also Haberern*, 812 F. Supp. at 1378 (excluding proposed expert testimony of attorney because expert's proposed testimony was "in essence, a legal opinion that the release Defendants requested Plaintiff to sign did not violate ERISA"); *Greene v. Drobocky*, 2014 WL 3955288 at *3, Civil Action No. 1:12-CV-00078 (W.D. Ky. Aug. 13, 2014) (granting motion to exclude experts in part because "[t]he vast majority of these experts' testimony and opinions are legal conclusions, namely whether Defendants' purported actions are violations of ERISA.  Expert testimony is not proper for issues of law."); *Johnson v. Evangelical Lutheran Church in America*, 2013 WL 1249151 at *5, Civil No. 11-00023 (D. Minn. Mar. 26, 2013) (granting motion to strike expert report in part because expert's "report is not helpful to the Court because it consists solely of inappropriate plan interpretation and legal conclusions").

*Alco Industries* is also instructive on this issue.  In that case, the court excluded expert testimony where the expert offered an opinion on whether the defendants had violated a fiduciary duty under ERISA.  *Alco Indus.*, 527 F. Supp. 2d at 409.  Critical to the court's decision was the legal nature of the questions answered by the expert; namely, his "'questions presented' revealed that his report address[ed] legal, not factual, questions. . . . ('Did the Defendants violate their ERISA fiduciary duty . . .?')."  *Id.*  Accordingly, the court in *Alco Industries* excluded the expert whose report was "essentially a brief on the ultimate legal issues *sans* case citations."  *Id.*

*Adalman v. Baker, Watts & Co.*, 807 F.2d 359 (4th Cir. 1986), is instructive on why courts do not allow proposed expert testimony of legal conclusions.  In that case, the defendants proffered an attorney "as an expert witness to testify in substantial part to the meaning and applicability of the securities laws to the transactions [at issue], giving his expert opinion on the governing law."  *Id.* at 368.  The district court refused to allow defendants' expert to testify.  On

appeal, the Fourth Circuit considered "to what extent may the parties call expert witnesses, lawyers in this case, to testify to the jury as to what the applicable law may mean, and what the applicable law does or does not require." *Id.* at 366.

The Fourth Circuit explained that the

> analysis beings with the proposition that under our system it is the responsibility—and the duty—of the court to state to the jury the meaning and applicability of the appropriate law, leaving to the jury the task of determining the facts which may or may not bring the challenged conduct within the scope of the court's instruction as to the law.

*Id.* at 366. Indeed, the Fourth Circuit could "conceive of no circumstances [involving domestic law] which would shift this burden from the court to the jury, where the jury judgment would be influenced, if not made, on the basis of expert witness testimony which would undoubtedly follow the usual patterns of conflicting expert opinions." *Id.* Critically, "[p]ermitting such testimony as to legal conclusions gives cogent meaning to the 'apprehension that jurors will turn to the expert, rather than the judge, for guidance on the applicable law.'" *Id.* (quoting 3 Weinstein and Berger, *Weinstein's Evidence*, 704-14 (1985)). Accordingly, the Fourth Circuit affirmed the district court's exclusion of the defendants' expert, finding it was "obvious that [defendants] proffered [the lawyer] as an expert witness to testify in substantial part to the meaning and applicability of the securities laws to the transactions [at issue], giving his expert opinion on the governing law." *Id.* at 368.

In summary, in ERISA cases, expert testimony as to legal conclusions is inadmissible just as in any other type of case. An expert's opinion about whether a party breached a fiduciary duty is a legal conclusion and, therefore, is inadmissible.

Moreover, the parties will fully brief the Court on the law governing Plaintiffs' ERISA claims since Plaintiffs' ERISA claims will not be tried before a jury. It is undeniable that

Plaintiffs' ERISA claims will not be tried before a jury since ERISA is "a statute primarily grounded in equity." *Alco*, 527 F. Supp. 2d at 405 ("Because this case arises under ERISA, a statute grounded primarily in equity, it will not be tried before a jury."). Courts in the Fourth Circuit have interpreted ERISA as an equitable statute that "does not statutorily provide for trial by jury, either expressly or implicitly." *Termini v. Life Ins. Co. of N. Am.*, 474 F. Supp. 2d 775, 777 (E.D. Va. 2007) (quoting *Lamberty v. Premier Millwork & Lumber Co.,* 329 F.Supp.2d 737, 744 (E.D.Va.2004)). Indeed, where, as here, a complaint seeks relief for alleged breaches of fiduciary duties and self-dealing pursuant to 29 U.S.C. 1132(a)(2) and (a)(3), such claims are not triable by jury, because they are "examined under trust law principles and fiduciary standards, which are within the exclusive jurisdiction of equity courts." *Id.* at 778-79; *see also, e.g., Williams v. UNUM Life Ins. Co. of Am.,* 940 F. Supp. 136, 138 (E.D. Va. 1996) (stating that causes of action under § 1132(a)(2) are "plainly limited to equitable relief"); *Broadnax Mills, Inc. v. Blue Cross & Blue Shield of Virginia,* 876 F. Supp. 809, 816 (E.D. Va. 1995) ("[i]n actions under § 1132(a)(2), any entitlement to monetary relief necessarily turns upon whether or not the fiduciary has breached its ERISA duties; thus, any relief sought is necessarily intertwined with the equitable process of resolving the ultimate issue-whether or not there has been a breach of fiduciary duty"); *Colonial Williamsburg Found. v. Blue Cross & Blue Shield of Virginia*, 909 F. Supp. 386, 390 (E.D. Va. 1995) (holding that plaintiff's claims of violations of 29 U.S.C. §§ 1132(a)(2) and (a)(3) could not be tried by jury, because "[a]ll of the violations of these statutory provisions . . . implicate fiduciary duties and trust law principles which traditionally have been resolved in suits in equity").

Accordingly, Defendants are confident that the fact finder in this case does not require a lawyer (who is not licensed in Virginia or D.C.) to direct what result to reach in determining

whether or not Dr. Wain and Mr. McManus breached any fiduciary duties to CSR or the CSR ESOP.

Moreover, to allow Mr. Horn, an attorney licensed in Massachusetts and California, to offer legal opinions on whether Dr. Wain and Mr. McManus breached their fiduciary duties as directors would be particularly dangerous given his incorrect application of the law.  In his report, Mr. Horn opines that the "defendants as board members failed to act prudently and consistently with their fiduciary duties under Virginia law."  Exh. 1 at 24-27 (citing Va. Code §§ 13.1-690, -691).  Allowing Mr. Horn to testify as to these erroneous legal conclusions would be particularly dangerous because Mr. Horn incorrectly assumes that Dr. Wain and Mr. McManus' conduct as members of the board of directors is governed by Virginia law.  In fact, CSR is a corporation organized under D.C. law and is, therefore, governed by D.C. corporate law—not Virginia.

In short, the Court—not Mr. Horn—is the appropriate expert in the law and is the only permissible option for instructing the fact finder as to the law applicable to the facts of this case. Accordingly, the Court should exclude the proposed testimony and report of Mr. Horn because they consist entirely of impermissible legal conclusions.

## IV.   __CONCLUSION__

For the reasons cited above, this Court should grant Defendants' Motion in Limine to Exclude the Testimony and Report of Plaintiffs' Expert Paul Horn.

Dated: September 26, 2014

> SHERRIE S. WAIN and
> TERRENCE M. MCMANUS
>
>
> _____/s/_____
> Charles M. Sims, Esq. (VSB No. 35845)
> Gretchen C. Byrd, Esq. (VSB No. 72789)
> LeClairRyan, A Professional Corporation
> Riverfront Plaza, East Tower
> 951 East Byrd Street, 8th Floor
> Richmond, Virginia 23219
> Telephone: (804) 343-5091
> Facsimile: (804) 783-7655
> charles.sims@leclairryan.com
> gretchen.byrd@leclairryan.com
> _Counsel for Defendants_

## CERTIFICATE OF SERVICE

I hereby certify that on 26th day of September, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jennifer A. Brust, Esq.
Rachelle E. Hill, Esq.
Bean, Kinney & Korman, PC
2300 Wilson Blvd., 7th Floor
Arlington, Virginia 22201
(703) 525-4000
Fax: (703) 525-2207
jbrust@beankinney.com
*Counsel for Plaintiffs*

Courtney R. Abbott, Esquire
Allen R. Bachman, Esquire
Gordon & Rees LLP
700 12th Street, N.W., Suite 1050
Washington, DC 20005
Telephone: (202) 399-1009
Facsimile:  (202) 800-2999
cabbott@gordonrees.com
*Counsel for Counter Defendants*

_____ /s/ _____
Charles M. Sims, Esq. (VSB No. 35845)
Gretchen C. Byrd, Esq. (VSB No. 72789)
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Richmond, Virginia 23219
Telephone: (804) 343-5091
Facsimile: (804) 783-7655
charles.sims@leclairryan.com
gretchen.byrd@leclairryan.com
*Counsel for Defendants*

14