UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| JOHN FOSTER-BEY, in his capacity as Trustee of and Participant under the CSR, Incorporated Employee Stock Ownership Plan, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No.: 1:13-CV-1382 |
| v. | ) ) | (CMH/JFA) |
| SHERRIE S. WAIN, *et al.*, | ) ) | |
| Defendants. | ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT PAUL HORN

COME NOW Plaintiffs John Foster-Bey, Trustee of and Participant under the CSR, Incorporated Employee Stock Ownership Plan (the "CSR ESOP"), and CSR, Incorporated ("CSR") (collectively, "Plaintiffs"), and state the following in opposition to the Motion in Limine to Exclude the Testimony of Plaintiffs' Expert Paul Horn (the "Motion in Limine") filed by Defendants Sherrie Wain and Terrence McManus (collectively, "Defendants").

### INTRODUCTION

The Employee Retirement Income Security Act ("ERISA") created a complex legal framework regulating the administration of pension plans to protect the interests of employee benefit plan participants and their beneficiaries. *See* 29 U.S.C. §§ 1001 *et seq.* Under that framework, plan fiduciaries are, *inter alia*, required to discharge their duties with respect to the plan "solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." *Id.* § 1104. However, while ERISA enumerates a number of requirements for such plans, and a number of acts that plan fiduciaries are prohibited from

taking, the exact "duties" plan fiduciaries must undertake in managing the plan on a day-to-day basis, and how those duties must or should be accomplished is not enumerated in the statute.

Plaintiffs' case focuses on Defendants' practices as plan fiduciaries and Plaintiffs will show that Defendants' acts violated ERISA. However, in order to determine if a particular practice is outside the norm, does not evidence undivided loyalty to the ESOP participants, and is not what a prudent fiduciary should do, it is essential to have a working knowledge of the responsibilities and practices of ERISA fiduciaries generally with respect to Employee Stock Ownership Plans ("ESOPs"). It is for that reason, to provide his specialized knowledge regarding the duties of an ERISA fiduciary and the responsibilities involved in the administration of ESOPs, that Plaintiffs have retained Mr. Horn. And, for the reasons set forth below, Mr. Horn's testimony should be admitted.

## ARGUMENT

"[A] trial court has broad discretion in deciding whether to admit expert testimony." *E.g*, *United States v. Belyea*, 159 Fed. Appx. 525, 529 (4th Cir. 2005); *accord In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) (In considering whether to admit expert testimony, it is important to remember that "Rule 702 mandates a policy of liberal admissibility"). Moreover, "[e]xpert testimony is admissible under Rule 702 of the Federal Rules of Evidence if it involves scientific, technical, or specialized knowledge that will assist the trier of fact to understand the evidence or determine a fact in issue." *Belyea*, 159 Fed. Appx. 525 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)).

Defendants have objected to Mr. Horn's testimony on the basis that he proffers "legal conclusions," however, as discussed in detail below, (1) the primary purpose of an expert witness is to assist the trier of fact and Mr. Horn's testimony will assist the trier of fact in deciding this

case, (2) this Court has held that whether or not an individual has breached a fiduciary duty is a question of fact, (3) there is no danger of confusing the jury as to the standard of law in this case given that there will be no jury, and (4) even if Mr. Horn's testimony does state legal conclusions, it is permissible for an expert to do so where the legal regime at issue is complex.

I.   **Paul Horn's Testimony Will Assist the Trier of Fact**

As noted in his expert report, attached as Exhibit A to Defendants' Motion in Limine, (the "Expert Report") Mr. Horn has worked in the field of employee benefits for over thirty years, and, since 1998, has provided guidance and supervision to fiduciaries of Employee Stock Ownership Plans formed under and subject to ERISA. Expert Report at 4-6. As such, Mr. Horn is both qualified and in a position to testify as to his specialized knowledge regarding the standards by which ESOPs are and should be administered and whether Defendants' actions comported with Mr. Horn's specialized knowledge of how such administration should be undertaken. *See* F.R.E. 702-703. As explained by the Fourth Circuit in *United States v. Offill*, "Federal Rule of Evidence 702 permits an expert to give opinions on scientific matters, technical matters, or matters involving other specialized knowledge so long as the testimony 'will assist the trier of fact to understand the evidence or determine a fact in issue' . . . The touchstone of the rule is whether the testimony will assist the jury." 666 F.3d 168, 175 (4th Cir. 2011) (internal citation omitted).

To aid the trier of fact, Mr. Horn will testify as to how Defendants' actions as trustees "creat[ed] an inherent conflict of interest that lacked any oversight," that "a prudent ESOP trustee would have prevented this self-dealing arrangement," and that it is standard in the field for a "prudent ESOP trustee . . .[to] require[] evidence that . . . executive bonus payments authorized by the board were reasonable via documentation from either (1) a compensation

consultant, or (2) a recent market compensation survey." Expert Report at 7-8 (stating his opinions). Mr. Horn will further testify that a "prudent ESOP trustee would have made further inquiry and taken remedial action in response to the repeated statements in CSR's ESOP valuation reports that the executive bonuses paid to the Company's officers were excessive," that "a prudent ESOP trustee would have made further inquiry and taken remedial action in response to repeated Company financial statements showing that executive bonuses paid to officers were treated as 'non-allowable' expenses," and that "a prudent ESOP trustee would have monitored the actions of a co-trustee . . . if the co-trustee's actions constituted a breach of fiduciary duties." *Id.* In short, these are all opinions of fact as to how an ESOP fiduciary should administer a plan, and whether or not the manner in which Defendants administered the CSR ESOP was within industry norms.

Notably, as a basis for his opinions, Mr. Horn relies upon a number of facts known to him as an expert in this field: (1) the training that an ESOP fiduciary must normally undertake, Expert Report at 9, (2) specific duties that the trustees must perform and how they should be performed, Expert Report at 10, (3) how ESOP trustees are normally elected and whether it is typical to have external or independent oversight, Expert Report at 11-13, (4) the prevalence of outside trustees and specialized training for trustees, Expert Report at 14-17, (5) why some companies do not have outside trustees, Expert Report at 18, (6) whether and how a typical independent trustee would have reviewed the compensation study provided to Defendants as trustees, Expert Report at 20, and (7) what the appropriate response to that information would have been, Expert Report at 22-23. These facts are not common knowledge, and it is necessary for Plaintiffs to retain an expert, such as Mr. Horn, to provide this information and analysis to the Court.

## II. Mr. Horn's Testimony Goes to Questions of Fact and Is Admissible

As explained above, Mr. Horn's testimony will assist the trier of fact to determine a fact at issue: whether Defendants' breached their fiduciary duties under ERISA. Mr. Horn provides considerable substantive analysis of the duties that an ERISA fiduciary must perform, how other ERISA fiduciaries behave in the situations that Defendants found themselves in, and whether Defendants' behavior comported with industry norms. Nevertheless, Defendants object to Mr. Horn's testimony in their Motion in Limine on the basis that he offers legal conclusions. This Court, however, has held that whether or not an individual has breached a fiduciary duty under ERISA is a question of fact, not a legal conclusion. *Helton v. AT&T, Inc.*, 805 F. Supp. 2d 223, 231 (E.D. Va. 2011) ("Defendants' failure to properly inform Plaintiff of her rights under the Plan may constitute a breach of their fiduciary duty and is a question of fact for trial"); *cf. Umholtz v. Brady*, 169 B.R. 569, 572 (E.D.N.C. 1993) (holding that the breach of a fiduciary duty is a mixed question of law and fact). Further, as Defendants point out, the "[c]ritical[]" concern regarding testimony that may suggest legal conclusions, is that "[p]ermitting such testimony . . . gives cogent meaning to the 'apprehension that jurors will turn to the expert, rather than the judge, for guidance on the applicable law." Motion in Limine at 10 (citing *Adalman v. Baker, Watts & Co.*, 807 F.2d 359 (4th Cir. 1986)). However, there is no jury in this case and no such risk exists.

Moreover, Federal Rule of Evidence 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." The official comment to the Rule explains that an opinion that "would merely tell the jury what result to reach" is not admissible, while opinions that speak directly to ultimate issues, but are "helpful to the trier of fact" in reaching a conclusion, are admissible. The example given in the comment is that "the question 'Did T have

capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed." F.R.E. 704 (comment citing McCormick § 12). In other words, opinions that provide expert analysis of the facts that speak directly to the ultimate issue are admissible while opinions that simply state how the expert believes the verdict should read are not. Unsurprisingly, in their Motion in Limine, Defendants focus on the ultimate conclusions of Mr. Horn and ignore the analysis he provides that will assist the trier of fact. That analysis, which answers questions such as "what duties are ERISA fiduciaries required to perform, how are they performed, and did Defendants perform in such a manner" answers questions of the type "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" and are admissible.

Accordingly, pursuant to Federal Rule of Evidence 704, Mr. Horn's testimony is admissible, even under the cases cited by Defendants. In *United States v. McIver*, the Fourth Circuit held that "expert testimony that Appellant treated certain patients outside the course of legitimate medical practice" was not a legal conclusion and was admissible." 470 F.3d 550, 561-562 (4th Cir. 2006). As the court explained:

> The line between a permissible opinion on an ultimate issue and an impermissible legal conclusion is not always easy to discern. *Barile*, 286 F.3d at 760. We identify improper legal conclusions by determining whether "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Id.* . . . On the issue of whether Appellant acted "outside the bounds of his professional medical practice and for other than legitimate medical purposes," Dr. Storick opined that Appellant's treatment of certain patients was either illegitimate or inappropriate. . . . [T]he district court properly admitted Dr. Storick's testimony and that Appellant cannot establish plain error.

*Id.* (some internal citations omitted). Likewise, in *United States v. Boccone*, the Fourth Circuit affirmed the admission of testimony that "[i]t is illegal and grossly substandard for a person without medical license and DEA registration to make therapeutic decisions and alter prescribing of controlled substances." 556 Fed. Appx. 215, 227 (4th Cir. 2014). The court explained that the testimony was admissible because

> opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible. Nevertheless, an expert may testify that treatment was outside the bounds of professional medical practice, or that treatment of certain patients was either illegitimate or inappropriate. Such language falls within the limited vernacular that is available to express whether a doctor acted outside the bounds of his professional practice. . . . The statement thus is relevant to the jury's determination that treatment of Rogers was outside the bounds of professional medical practice.

*Id.* (internal citation omitted); *see also Jimenez v. City of Chicago*, 732 F.3d 710, 719 (7th Cir. 2013) (expert testimony regarding what constituted reasonable police investigatory practices and "show[ing] that the errors in defendants' handling of the investigation were so severe and numerous as to support an inference of deliberate wrongdoing in violation of the Constitution" was properly admitted).

Mr. Horn's testimony is exactly like the testimony in *McIver* and *Boccone*. The experts in *McIver* and *Boccone* testified that the defendants in those cases acted illegally because that describes the fact that those doctors did not perform their duties as they were required to. Likewise, Mr. Horn testified that Defendants did not fulfill their duties to the plan, which simply states the fact that Defendants' actions did not comport with how fiduciaries under ERISA normally behave.

On the other hand, the cases cited by Defendants in their Motion in Limine in which testimony was excluded, concern experts opining on such purely legal issues as their interpretation of legal documents and whether a fiduciary duty arose under the law. For example,

Defendants cite to *United States v. Chapman*, which affirmed a trial court that had precluded expert testimony on "whether a fiduciary duty existed." Motion in Limine at 8 (citing 209 Fed. Appx. 253). As the court explained:

> To the extent that Chapman's experts would testify about whether a fiduciary duty existed, the district court noted that the legal definition of fiduciary duty would be presented to the jury through its instructions and that the testimony Chapman sought to present would therefore amount to an improper legal opinion. Rule 702 permits expert testimony where it is helpful to the trier of fact. . . . While expert testimony is not inadmissible simply because it touches on an ultimate issue, such testimony is "excludable under Rule 702 if it does not aid the jury." *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002).

(some internal citations omitted). Here, unlike the expert in *Chapman*, Mr. Horn is not testifying as to the legal question of whether a fiduciary duty existed, he is testifying as to the nature of the tasks that an ERISA fiduciary undertakes and whether Defendants performed those tasks. Part of the answer to those questions is that Defendants did not perform those duties, which are fiduciary in nature.

Another case relied upon extensively by Defendants, *Alco Industries*, is a district court opinion from Pennsylvania. Motion in Limine at 8-9 (citing *Alco Indus. v. Wachovia Corp.*, 527 F. Supp. 2d 399, 405 (E.D. Pa. 2007). According to the court in that case, the expert performed "no substantive analysis of the risks in the . . . plans' portfolios," he opined only that "Wachovia violated its duty of prudent investment by failing to diversify the . . . portfolios." *Id.* Unlike *Alco*, Mr. Horn has and will be providing substantive analysis of how ESOP trustees perform their duties and of the well-established use of independent, outside trustees in the industry.

Notably, the *Alco Industries* court also explained that where there is a bench trial, it is not necessary to exclude testimony on the basis that it may be inadmissible because "the court has the flexibility to allow such testimony provisionally and revise its view once the testimony is taken." *Id.*

Similarly, Defendants also cite to *Forrest Creek Associates, Ltd. v. McLean Savings & Loan Association*, in which the Fourth Circuit affirmed Judge Hilton's exclusion of expert testimony, but the testimony excluded was an expert's interpretation of a contract: an opinion as to the legal significance of a document. Motion in Limine at 6 (citing 831 F.2d 1238, 1242 (4th Cir. 1987) ("the commitment agreement speaks for itself, and its proper interpretation is a question of law. Thus, we find that the district court was correct in excluding expert testimony proffered by the plaintiffs for the purpose of interpreting the standby fee clause")).

Under these precedents, Mr. Horn's testimony is clearly admissible.

### III. Even If Mr. Horn's Testimony States Legal Conclusions, It Is Admissible

"[W]hen the legal regime is complex and the judge determines that the witness' testimony would be helpful in explaining it to the jury, the testimony may be admitted." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. Va. 2011) (allowed expert to testify "on the general operation of securities law") (citing *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002)); Weinstein's Federal Evidence § 704.04[2][a] (2d ed. 2003) ("[Expert] testimony may be helpful if the case involves a specialized industry")). For example, in *United States v. Duarte*, testimony of an expert regarding money laundering was admissible because "the prosecution involved a complicated drug distribution network spanning Guatemala and the United States[, and t]he organization used a variety of methods to return the cash proceeds to Guatemala." 2014 U.S. App. LEXIS 15614, 5-6 (4th Cir. 2014).

Here, ERISA is, undeniably, a complex legal framework and the duties of an ERISA fiduciary are not self-evident from the statutes. While general principles have been enumerated, their implementation by trustees and the propriety of particular actions with respect to plan administration is not something that is generally known. ERISA itself does not address the duties

plan fiduciaries must undertake in managing an ESOP. Mr. Horn, or a similarly qualified expert, is the only person in a position to provide the court with this type of information and said testimony, dealing with a very complex matter, will undoubtedly assist the trier of fact. For these reasons, Mr. Horn's testimony, even if it consists, in part, of legal conclusions, is admissible to assist the trier of fact in understanding the practical duties imposed by ERISA on a plan trustee.

## IV. Mr. Horn's Opinions Regarding the Defendants' Performance of Their Corporate Fiduciary Duties under State Law Is Admissible

Finally, Defendants assert that Mr. Horn should not be permitted to testify as to the Defendants' corporate fiduciary duties under state law. Motion in Limine at 11-12 (discussing Mr. Horn's Opinion 8). In that regard, Mr. Horn testified in his report as to what Defendants were required to do under their duty to act in "good faith" and "in the best interests of the corporation." Expert Report at 24. While Defendants are correct that Mr. Horn erroneously refers to Virginia corporate law statutes while CSR is incorporated in D.C.,[1] this does not substantively affect the validity of Mr. Horn's opinion, as the corporate law of D.C. and Virginia is the same on this issue. *Compare* Va. Code § 13.1-690; *with* D.C. Code § 29-306.30(a) ("Each member of the board of directors, when discharging the duties of a director, shall act: (1) In good faith; and (2) In a manner the director reasonably believes to be in the best interests of the corporation").

## V. To the Extent Any of Mr. Horn's Testimony Is Inadmissible, the Remainder Must Be Admitted

To the extent that the Court agrees with Defendants that Mr. Horn has offered inadmissible legal conclusions, the Court should exclude only those conclusions and allow the

---

[1]*See, e.g.*, *In re Capital One*, 979 F. Supp. 2d 682, 694-95 n. 18 (E.D. Va. 2013) ("Because Capital One is incorporated under the laws of the state of Delaware, Delaware law governs the internal affairs of the corporation").

remainder of Mr. Horn's testimony. *See, e.g.*, *Morpho Detection, Inc. v. Smiths Detection, Inc.*, 957 F. Supp. 2d 655, 678 (E.D. Va. 2013) (motion in limine was granted in part, and expert was allowed to testify, except as to "infringement" or "obviousness"); *Peters v. Balt. City Bd. of Sch. Comm'rs*, 2014 U.S. Dist. LEXIS 116338 (D. Md. 2014) ("although Haag-Hatterer's report contains multiple assertions that are unreliable and/or impermissible legal conclusions, there are some portions of Haag-Hatterer's testimony that may be admissible. . . . Therefore, the Court will grant the Motion to Strike in part. Haag-Hatterer will not be permitted to testify regarding her 'overview' of the relevant statutes or the state of the law, nor will she be permitted to offer any legal conclusions, as those are impermissible because they are unreliable and invade the province of the jury. . . . More generalized testimony regarding factual - not legal - conclusions related to her human resources experience, however, may be admissible.")

## CONCLUSION

For all of the above stated reasons, Plaintiffs respectfully request that Defendants' motion be denied and Mr. Horn's testimony be admitted.

Dated: October 10, 2014      Respectfully submitted,

        */s/ Jennifer A. Brust*
        Jennifer A. Brust, Esq. (VSB No.: 29707)
        William F. Krebs, Esq. (VSB No.: 17347)
        William E. Evans, Esq. (VSB No.: 83870)
        BEAN, KINNEY & KORMAN, P.C.
        2300 Wilson Blvd., 7th Floor
        Arlington, Virginia 22201
        (703) 525-4000
        (703) 525-2207 (Fax)
        jbrust@beankinney.com
        wkrebs@beankinney.com
        wevans@beankinney.com
        *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, October 10, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Charles M. Sims, Esq.
> Justin M. Sheldon, Esq.
> LECLAIRRYAN
> Riverfront Plaza, East Tower
> 951 East Byrd Street
> Richmond, Virginia 23219
> Telephone: (804) 968-2985
> Facsimile: (804) 783-7682
> john.robb@leclairryan.com
>
> Courtney Renee Abbott
> Allen R. Bachman
> Gordon & Rees LLP (DC)
> 700 12th Street NW
> Suite 1050
> Washington, DC 20005
> cabbott@gordonrees.com

*/s/ Jennifer A. Brust*
Jennifer A. Brust, Esq.